IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRY KUEHNER,                          )
                                        )          Civil Action No.  08 - 1319
                    Plaintiff,          )
                                        )          District Judge David S. Cercone
             v.                         )          Magistrate Judge Lisa Pupo Lenihan
                                        )
PHYSICIAN ASST. MYER; DR.               )
HERBIK; and DR. SAAVEDRA,               )
                                        )
                    Defendants.         )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendants Myers and

Dr. Herbick (ECF No. 76) be granted.  It is further recommended that the Motion for Summary

Judgment filed by Defendant Dr. Saavedra (ECF No. 92) be granted.

### II.   REPORT

Plaintiff, Terry Kuehner, an inmate presently incarcerated at the State Correctional Institution

at Mercer, Pennsylvania, commenced this civil action pursuant to the Civil Rights Act of 1871, 42

U.S.C. § 1983, against the following Defendants:  Jeffrey Beard, Secretary of the Pennsylvania

Department of Corrections (DOC); Brian Coleman, Superintendent at SCI-Fayette; Robert Tretinik,

Correctional Health Care Administrator at SCI- Fayette (collectively referred to as   the

Commonwealth Defendants); Physician Assistant Christopher Myer; Dr. Michael Herbick and Dr.

Peter Saavedra (collectively referred to as the Medical Defendants).  On January 6, 2010, the District

Court granted the Commonwealth Defendants' Motion to Dismiss and those Defendants were

dismissed from this action.  On that same date, the District Court denied the Medical Defendants'

Motion to Dismiss but granted their Motion for More Definite Statement.  On March 31, 2010,

Plaintiff filed an Amended Complaint (ECF No. 73-1).

On April 13, 2010, Defendants Dr. Herbick and Myers filed a Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 76). On May 17, 2010, Defendant Dr. Saavedra filed, under seal, a Motion for Summary Judgment (ECF No. 92). For the reasons that follow, both of these motions should be granted.

## A. Standards of Review

Defendants Myers and Herbick have filed a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6). With regard to this motion, the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate

a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).[1]  It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss.  Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted).  Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment.  Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir.

---

1.  .  See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

1999)).  *See also* <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting <u>Higgins</u>, 293 F.3d at 688 ).

Defendant Saavedra has filed a motion for summary judgment pursuant to Fed. R. Civ. P 56(c).  Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well.  <u>Whiteland Woods, L.P. v. Township of West Whiteland</u>, 193 F.3d 177, 180 (3d Cir. 1999); <u>Tigg Corp. v. Dow Corning Corp.</u>, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Specifically, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).  The non-moving party must respond "by pointing to sufficient

cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." Simpson v. Kay Jewelers, Div. Of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The non-moving party cannot defeat a well supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### B. Failure to Exhaust Administrative Remedies

Defendants' Herbick and Myers assert that the Amended Complaint should be dismissed as to them due to Plaintiff's failure to have exhausted available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.  In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement.  Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66.  A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures.  In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* Mitchell v. Horn, 318 F.3d 523 (2003) (discussing DOC Grievance System).  The purpose of the grievance system is to ensure that every individual committed to DOC custody has access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought.  The DOC grievance system applies to all state correctional institutions and provides three levels of

review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

Inmate grievances must be in writing and in the format provided on the forms supplied by the institution. An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with DC-ADM 804, the Facility Grievance Coordinator designates a staff member to serve as the Grievance Officer for that issue. If the Facility Grievance Coordinator determines that the issue being grieved is not in accordance with DC-ADM 804, it is returned to the inmate unprocessed with a DC-804, Part 3, Grievance Rejection Form (Attachment C) enumerating the reason(s) the grievance was not accepted. The grievance, if resubmitted, must be resubmitted under the same grievance number within 5 working days. The Grievance Officer is required to provide a written response to the inmate within 10 working days of receipt of the grievance. An inmate may appeal an Initial Review decision to the Facility Manager in writing within 10 working days from the date of the Initial Review decision. The Facility Manager must notify the inmate of his/her decision within 10 working days of receiving the appeal. Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within 15 working days from the date of the Facility Manager's decision. An inmate appealing a grievance to final review is responsible for providing the Secretary's Office of Inmate Grievances and Appeals with all required documentation relevant to the appeal. A proper appeal to final review shall include photocopies of the initial grievance, initial review response, the inmate appeal to the Facility Manager, and the Facility Manager's decision; failure to provide the

proper documentation may result in the appeal being dismissed. The Secretary's Office will issue

a decision within 30 working days after receipt of an appeal.

In the instant action, Plaintiff asserts liability against Defendants Myers, Herbick (and former

Defendant Tretinik) on the basis that they allegedly refused to give him medical treatment for

heartburn and back pain when he refused to sign the cash slip for the required five dollar co-pay

treatment fee.[2] Defendants assert Plaintiff failed to have exhausted his administrative remedies in

that he failed to have completed the three-step grievance process provided for in DC-ADM 804. In

this regard, on July 31, 2008, Plaintiff filed Grievance Number 237696 complaining about the lack

of medical treatment (ECF No. 24-1, p.2). This grievance was denied because it was not timely

submitted within the required fifteen-day period (ECF No. 24-1, p.3). Plaintiff appealed this

determination and on August 11, 2008, Superintendent Coleman responded as follows.

> I am in receipt of your rejected grievance #237696 and your appeal of
> such. Your grievance was rejected and returned to you because you
> have failed to comply with the directives of the DC ADM 804, Inmate
> Grievance System.
>
> Your grievance was rejected based on Reason Number 8. Reason
> number 8 states: The grievance was not submitted within fifteen (15)

---

2. DOC charges inmates a $5.00 co-pay for non-emergency medical services pursuant to DC-ADM 820. The courts unanimously have determined that requiring prisoners to pay for medical care is not *per se* unconstitutional. *See, e.g.,* Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 416 (3d Cir. 2000); Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir.1997) . *See also* Cannon v. Mason, 340 Fed. App'x. 495 (10th Cir. 2009); White v. Correctional Medical Services Inc., 94 Fed. App'x 262, 264 (6th Cir. 2004); Blaise v. McKinney, Civ. A. No. 98-3916, 1999 WL 486854, 1 (8th Cir. July 12, 1999) ("Eighth Amendment's prohibition against cruel and unusual punishment requires prisons to provide basic medical care to inmates, but does not require that medical care be provided at no cost"). Here, Defendants have submitted Plaintiff's inmate account statement showing that he had more than adequate resources to pay the required co-pay during the relevant time period. ECf No. 24-3, pp. 2-5. Moreover, the policy specifically provides that "No inmate shall be refused a medical service for financial reasons. If an inmate lacks sufficient funds to pay the medical service fee, his/her account will be debited and the fee recouped in accordance with DC-ADM 005, 'Collection of Inmate Debts.' " DC-ADM 820 Section 2.A.

days after the event upon which claims are based. You failed to provide the date you signed up for sick call. You failed to provide the date you saw Psych about your medication. When an inmate files [sic] to provide these dates it is determined that the inmate failed to meet the 15 day deadline set forth by policy.

As to your statement "Well if you checked the records on my sick call and the call out on the Psych Doctor you won't have to worry so much about the 15 days being submitted because it was submitted in 15 days." Please be advised that by policy it is YOUR responsibility to provide the grievance office with all information that is needed.

According to the DC-ADM 804 you had five days to correct the deficiency and resubmit the grievance. You failed to do that.

Please be advised your grievance and appeal are dismissed.

ECF No. 24-1, p. 5.

Plaintiff appealed this determination to final review and on September 19, 2008, it was denied due to Plaintiff's failure to provide the required documentation for final review despite being reminded to do so (ECF No. 24-1, p.11).

The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).[3] The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548 U.S. 81 (2006) wherein it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an

_____

3. The relevant regulations require the inmate to include a statement of the facts relevant to the claim, identify any persons who may have information that could be helpful in resolving the grievance and include information on attempts to resolve the matter informally.

incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 548 U.S. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Id. at 94.

In the case at bar, Plaintiff procedurally defaulted his medical treatment claim against Defendants Herbick, Myers and Tretinik in several major respects. First, by failing to grieve his claims within the mandatory fifteen day period.[4] Second, by failing to amend his grievance to

---

4. It is further noted that the record shows that On July 25, 2008, Plaintiff was scheduled for sick call, but refused to be seen, stating "I don't want the meds if I have to pay for them." Statement of Facts in Support of Summary Judgment Motion (ECF No. 94, p. 29, ¶ 71). Thus, it appears that, had Plaintiff provided this information in a supplement to his grievance, it likely would have been reviewed. He provides no reasons for his failure to have done so. It is further noted that Plaintiff's medical records show that he was seen by Dr. Herbick and CHCA Tretinik on

(continued...)

provide the required information as to the date of his claims. Third, by failing to provide the required documentation for final review. *See* Eakle v. Palakovich, 200 Fed. Appx. 155, 156, 2006 WL 2917531, *1 (3d Cir. 2006). And finally, by failing to specifically name relevant facts and accused individuals in a grievance. *See* Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Given that Plaintiff has clearly failed to do so, and that he is now time-barred from rectifying his mistakes, it appears to this Court that Plaintiff, as a matter of law, cannot prevail in this suit against Defendants Herbick, Myers and Tretinik. Furthermore, any opportunity afforded to Plaintiff to amend his complaint would be futile.

In the absence of any controlling authority to the contrary, this Court is required to follow the directives of the Court of Appeals for the Third Circuit and, therefore, recommends to grant the Motion to Dismiss filed by Defendants Herbick and Myers due to Plaintiff's failure to have properly exhausted his available administrative remedies.[5]

## C. Liability under 42 U.S.C. § 1983

The remaining Defendant is Dr. Saavedra. Plaintiff's Complaint seeks to assert liability against Defendant Saavedra pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v.

---

4. (...continued)
September 11, 2008 where he was argumentative about the co-pay policy. He could have filed a new grievance as to that incident within fifteen days but he does not claim to have done so.

5. Although Defendant Tretinik was dismissed from this action, the discussion is relevant to any claim that Plaintiff should be given an opportunity to amend his complaint to reinstate Defendant Tretinik as such would be futile in the present circumstances.

Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff grounds his claim against Dr. Saavedra under the Eighth Amendment. In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires Plaintiff to objectively show that the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The subjective prong requires Plaintiff to show that Defendant Saavedra "possessed 'a sufficiently culpable state of mind in denying medical care' ... greater than mere negligence." Miller v. Calhoun County, 408 F.3d 803, 813 (6th Cir. 2005). Deliberate indifference may be manifested

by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).  Deliberate indifference also may be found where the prison official persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury."  White v. Napoleon, 897 F.2d 103, 109-111 (3d Cir. 1990).  The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action.  Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997).  The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference.  Farmer, 511 U.S. at 837. An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified."  *Id.*  Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation.  Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 429 U.S. 97, 104 (1978).  In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck.  He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell.  He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant.  Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses.  Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light

work.  During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication.  Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . ..  They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury."  The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers.  Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued.  The Court of Appeals agreed, stating:  "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing."  <u>But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act</u>.

<u>Gamble</u>, 427 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in <u>Gamble</u>, Plaintiff's medical records indicate that he received extensive medical treatment by Dr. Saavedra.  In this regard, the Statement of Facts (ECF No. 94), as supported by the record evidence and undisputed by Plaintiff, [6] reveals the following.

---

6.  The Local Rules of the United States District Court for the Western District of Pennsylvania require a party to file a responsive "concise statement which responds to each numbered paragraph in the moving party's [statement of facts] by ... admitting or denying whether each fact

(continued...)

On June 15, 2006, Plaintiff was transferred from SCI-Camp Hill to SCI-Fayette in regard to his sentence of 18 months to ten years for aggravated assault. At that time, he was taking medications for post traumatic stress disorder (PTSD) and depression. On June 26, 2006, he was first evaluated by Dr. Saavedra who assessed him as suffering from PTSD and a history of alcohol abuse. Based on his evaluation, he discontinued Plaintiff's Prozac medication noting Plaintiff told him it was not helpful. Dr. Saavedra continued to see him on a weekly basis until July 25, 2006 when he was weaned off his psychiatric medications. On December 19, 2006, Dr. Saavedra dictated an evaluation note for parole consideration, which stated that Plaintiff was stable and had not taken psychotropic medications for some time. He noted that if Plaintiff was paroled he would need to see mental health providers only if necessary. Dr. Saavedra wrote a similar parole evaluation in June of 2007.

In the meantime, in April of 2007, Plaintiff was evaluated by a psychologist named James Dattilio who issued a report for the Court of Common Pleas of Carbon County stating that Plaintiff suffered from a severe mental illness - schizoaffective illness, bipolar type, with a pervasive paranoid delusional system, which was exacerbated by a poor medication regimen. He recommended treatment at Norristown State Hospital to stabilize him and convince him he needed medication.

---

6. (...continued)

contained [in the movant's statement of facts] ... is undisputed and/or material ... setting forth the basis for the denial if any fact ... is not admitted in its entirety, with appropriate reference to the record ..." *See* L.R. 56.1(C)(1)(a) & (b). Under our Local Rules, material facts set forth in a moving party's statement of facts will be deemed admitted for the purpose of deciding the motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." See L.R. 56.1(E). Plaintiff's responses to Defendants' motions do not contain any basis for any of denial of a fact and also fail to reference the record for each such denial. Though this Court must give certain latitude to a *pro se* litigant, it is not for the Court to sort through the entire record to determine the basis of an alleged disputed fact. As Plaintiff has failed to comply with our local rules, Defendant's Statement of Facts are admitted as true and correct.

Plaintiff next saw Dr. Saavedra on September 17, 2007 who noted that Plaintiff appeared stable with no psychosis, paranoia or flashbacks and had reduced PTSD symptoms. The plan at that time was to transfer him to Norristown for the court ordered competency evaluation. Plaintiff was transferred to Norristown on December 5, 2007.

Upon his admission, Plaintiff was examined by Dr. Peter Sojka. When asked about his present condition, he denied any problems. Later that day, he informed the nurse that he had chronic low back pain and that he forgot to tell the doctor this during his assessment. A psychiatrist named Dr. Paneque evaluated him on December 5, 2007 and diagnosed Plaintiff as suffering from depression, a history of alcohol abuse and PTSD. With regard to his lower back pain, he was given Motrin as needed. On December 11, 2007, he was seen by psychiatrist Alexander Avenirov who prescribed Lexapro to control anxiety and depressed mood. Thereafter, Dr. Avenirov saw Plaintiff on a weekly basis. On December 27, 2007, Dr. Sojka ordered Protonix for Plaintiff's heartburn and on January 23, 2008, Dr. Sojka ordered Neurontin for Plaintiff's back pain. On February 5, 2008, Dr. Sojka prescribed Ultram for Plaintiff's back pain. On February 28, Plaintiff was discharged from Norristown with diagnoses of mood disorder, PTSD, alcohol abuse history and personality disorder not otherwise specified. In his discharge report, Dr. Avenirov noted that Plaintiff currently was taking 20 mg Lexapro and recommended continuing treatment with antidepressive and anti-anxiety medications. Dr. Sojka's discharge report indicated that Plaintiff suffered from chronic lower back sprain and GERD and that he was taking Neurontin 60 mg and Ultram 50 mg as needed for his back pain and Protonix for his GERD. He made no specific follow-up recommendations in his discharge summary.

On February 29, 2008, Plaintiff was seen by PA Darla Cowden at SCI-Fayette who noted on his chart that he had been put on Lexapro and Neurontin for known bipolar disorder and Prilosec for

heartburn. She also noted he was on Ultram, Motrin and Tylenol. She discontinued the Prilosec and ordered Pepcid in its place and ordered a lumbo-sacral spine X-Ray and Motrin and Tylenol. She did not order Neurontin or Ultram. Sometime thereafter, Dr. Saavedra reviewed Plaintiff's chart and re-ordered the medications he was prescribed on discharge from Norristown. On March 3, 2008, Plaintiff was seen by Ms. Cowden on sick call where he claimed his medications were all messed up. She reviewed his chart and noted that his medications were ordered but had not been taken off his chart by staff. She made sure the orders were initiated and reordered the Tylenol and Motrin.

On March 5, 2008, Plaintiff was seen by Dr. Saavedra who ordered that he be tapered off the Neurontin because there was no clear indication for its use. He ordered that the Neurontin be reduced and then discontinued. He also discontinued Celexa (an anti-depressant) and ordered Doxepin (an anti-depressant and anti-anxiety medication). Plaintiff was seen by Dr. Saavedra on March 11, 2008 where Plaintiff reported feeling over medicated. Dr. Saavedra noted that Plaintiff was fixated on Neurontin however, there was no clear indication for its use. He ordered the Doxepin discontinued due to the side effects and noted he would monitor Plaintiff off his medication. Dr. Saavedra saw Plaintiff again on March 14, 2008 where Plaintiff complained of being depressed and anxious. Dr. Saavedra ordered Celexa be restarted and saw him weekly thereafter. On March 31, 2008, Dr. Saavedra again discontinued the Celexa due to possible side effects.

Plaintiff saw Dr. Saavedra on April 10 and April 17, 2008 where he requested Neurontin for anti-depression. Dr. Saavedra told him Neurontin was not an anti-depressant and recommended Zoloft. Plaintiff declined this medication. On April 21, 2008, Plaintiff was seen by PA Cowden who noted his Prilosec had been changed to Pepcid, he had no gastrointestinal symptoms, and he was doing well with Motrin/Tylenol. Her assessment was chronic back pain and gastroesophageal reflux disease and wrote orders for 600 mg Motrin and 20 mg of Pepcid. After declining medications

during several previous visits, on June 20, 2008, Plaintiff agreed to take the anti-depressant Elavil. He continued on this medication until July 24, 2008 when he was switched to Zoloft. On July 25, 2008, he was scheduled for a sick call but refused to be seen stating "I don't want the meds if I have to pay for them." (Because mental health treatment is excluded from DOC's co-pay requirement, the Court assumes Plaintiff was referring to his medications for Motrin and Pepcid). It is also noted that on September 11, 2008, he was seen by Dr. Herbick who noted that he was argumentative about the co-pay requirement and that he was seen with the CHCA, Tretinik.

On August 25, 2008, Dr. Saavedra began tapering Plaintiff off his Zoloft medication and began him on Remeron and continued to monitor him. On December 1, 2008, Dr. Saavedra noted that Plaintiff was angry and upset about not getting Ultram for back pain and said he was going to sue.

In his Amended Complaint, Plaintiff claims that Dr. Saavedra was deliberately indifferent for discontinuing his Neurontin, failing to order Ultram and for not ordering blood testing to evaluate his medications. While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere.[7] A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice."

---

7. *See, e.g.*, <u>Dias v. Vose</u>, 960 F.2d 143 (1st Cir. 1991); <u>United States v. DeCologero</u>, 821 F.2d 39, 42 (1st Cir. 1987) ("though it is plain that an inmate deserves adequate medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy"); <u>Ferranti v. Moran</u>, 618 F.2d 888, 891 (1st Cir. 1980) (a dispute over the exercise of professional medical judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation).

Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

Plaintiff has not established that Defendant Saavedra knew of and disregarded an excessive risk to inmate health or safety where the record would not permit a rational factfinder to conclude that Defendant Saavedra acted with deliberate indifference. To survive Defendant Saavedra's motion for summary judgment, Plaintiff is required to point to some evidence to show that Saavedra knew or was aware of a substantial risk of serious harm to Plaintiff. Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2001). Specifically, there is no record evidence that suggests that Defendant Saavedra knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it or that he had any reason to know that he faced any substantial harm. Dr. Saavedra is a psychiatrist and discontinued the Neurontin as it was not indicated for treatment of Plaintiff's mental health issues. When Plaintiff was returned from Norristown Dr. Saavedra ordered the medications Plaintiff was on at Norristown and then determined that Plaintiff should be tapered off the Neurontin. If Plaintiff did not receive his medication for a mere four days due to ordering mishaps, that is not deliberate indifference on the part of Dr. Saavedra. Moreover, to the extent that Plaintiff believed he should have been prescribed Neurontin or Ultram, that decision would have been made by a health care provider other than a psychiatrist as was done at Norristown. In light of the record, the court does not believe a rational trier of fact could find that Defendant Saavedra was deliberately indifferent to this Plaintiff's serious needs. Accordingly, Defendant Saavedra is entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendants Myers and Dr. Herbick (ECF No. 76) be granted and that the Motion for Summary Judgment filed by Defendant Dr. Saavedra (ECF No. 92) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: October 8, 2010

Terry Kuehner
GM-4552
SCI Mercer
801 Butler Pike
Mercer, PA 16137